UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMARYLLIS F.,

                              Plaintiff,

                    v.

MARTIN O'MALLEY,[1] Commissioner of
  Social Security,

                              Defendant.
_____

**DECISION**
**and**
**ORDER**

**21-CV-6166F**
**(consent)**


APPEARANCES:          HILLER COMERFORD INJURY & DISABILITY LAW PLLC
                      Attorneys for Plaintiff
                      IDA M. COMERFORD,
                      JUSTIN DAVID JONES, and
                      KENNETH R. HILLER, of Counsel
                      6000 North Bailey Avenue
                      Suite 1A
                      Amherst, New York  14226

                      TRINI E. ROSS
                      UNITED STATES ATTORNEY
                      Attorney for Defendant
                      Federal Centre
                      138 Delaware Avenue
                      Buffalo, New York  14202
                              and
                      KATHRYN L. SMITH
                      Assistant United States Attorney, of Counsel
                      100 State Street
                      Rochester, New York  14614
                              and
                      REBECCA HOPE ESTELLE
                      Special Assistant United States Attorney, of Counsel
                      Social Security Administration
                      Office of General Counsel
                      6401 Security Boulevard
                      Baltimore, Maryland  21235

---

[1] Martin O'Malley became the Acting Commissioner of the Social Security Administration on December 20, 2023, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On April 11, 2024, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order.  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on December 6, 2021 (Dkt. 9), and by Defendant on April 11, 2022 (Dkt. 10).

**BACKGROUND**

Plaintiff Amaryllis F. ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application ("application") filed with the Social Security Administration ("SSA") on January 4, 2017, for Supplemental Security Income under Title XVI of the Act ("disability benefits").  Plaintiff alleges she became disabled on December 6, 2015, based on depression, anxiety, panic attacks, post-traumatic stress disorder ("PTSD"), chronic headaches, severe anemia, and mental health.  AR[2] at 167, 211, 224, 228, 728. Plaintiff's application initially was denied on April 28, 2017.  AR at 54-3.

On May 8, 2017, Plaintiff timely filed a request for an administrative hearing, AR at 79-81, and on March 22, 2018, an initial hearing ("the first hearing") was held in Rochester, New York, before Administrative Law Judge ("ALJ") Michael W. Devlin ("the ALJ").  AR at 31-53.  Appearing and testifying at the first hearing were Plaintiff,

---

[2] References to "AR" are to the Bates-stamped pages of the Administrative Record electronically filed by Defendant on July 13, 2021 (Dkt. 7).

represented by Justin Goldstein, Esq., and impartial vocational expert ("VE") Peter Manti.

On May 9, 2018, the ALJ issued a decision denying Plaintiff's claims, AR at 14-30 ("first ALJ decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 163-66.  On July 5, 2018, the Appeals Council denied Plaintiff's request to review the first ALJ decision, rendering the first ALJ decision the Commissioner's final decision at that time.  AR at 1-8.

On September 4, 2018, Plaintiff commenced an action in this court seeking judicial review of the first ALJ decision, *Figueroa v. Comm'r of Soc. Sec.*, No. 18-CV-06633-HBS (W.D.N.Y.), and a Decision and Order entered on March 16, 2020, vacated the first ALJ decision and remanded the matter to the Commissioner for further administrative proceedings regarding the ALJ's consideration of the medical opinion of Plaintiff's treating psychiatrist.  *Figueroa v. Commissioner of Soc. Sec.*, 2020 WL 1242414, at *4 (W.D.N.Y. Mar. 16, 2020); AR at 789-95 ("the District Court's Order").  On April 28, 2020, the Appeals Council entered an order vacating the first ALJ decision and remanding the matter to an ALJ for further proceedings consistent with the District Court's Order.  AR at 797-800 ("Appeals Council's Order").  Upon remand by the Appeals Council, the matter was again assigned to ALJ Devlin.

On July 23, 2020, a second administrative hearing was held in Rochester before ALJ Devlin by telephone conference at which Plaintiff, then represented by Anthony DeMarco, III, Esq., appeared and testified, and testimony was also given by vocational expert Joseph Young ("the VE") ("second hearing").  AR at 747-63.  On October 23, 2020, the ALJ issued a decision denying Plaintiff's claims, AR at 725-46 ("second ALJ

decision").  On February 18, 2021, Plaintiff commenced the instant action seeking

review of the second ALJ decision denying Plaintiff disability benefits.

On December 6, 2021, Plaintiff moved for judgment on the pleadings (Dkt. 9)

("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion

for Judgment on the Pleadings (Dkt. 9-1) ("Plaintiff's Memorandum").  On April 11, 2022,

Defendant moved for judgment on the pleadings (Dkt. 10) ("Defendant's Motion"),

attaching the Commissioner's Brief in Support of the Commissioner's Motion for

Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule

5.5 (Dkt. 10-1) ("Defendant's Memorandum").  Filed on May 11, 2022, was Plaintiff's

Reply Brief to Defendant's Motion for Judgement [*sic*] on the Pleadings (Dkt. 11),

advising Plaintiff was relying on her initial arguments because any further argument

"would simply duplicate arguments made in the original brief."  Oral argument was

deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is

GRANTED.


## FACTS[3]

Plaintiff Amaryllis F. ("Plaintiff"), born November 19, 1987, was 28 years old as of

her alleged disability onset date ("DOD") of December 6, 2015, and 32 years old as of

October 28, 2020, the date of the second ALJ decision.  AR at 167, 211, 740.  As of the

second administrative hearing, Plaintiff lived in her mother's apartment with her mother,

and Plaintiff's seven children ranging in age from almost two to fourteen.  AR at 184-85.

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for
determining the pending motions for judgment on the pleadings.

Plaintiff attended regular classes in school, and is a high school graduate having obtained a GED in 2013, AR at 229, and obtained a certificate to be a medical secretary.  AR at 760.  Plaintiff has past work experience as a dietary aide, retail stockperson, customer service telephone representative, and fast food cashier.  AR at 25, 173-83, 197-204, 230.  Plaintiff claims she has a lifelong history of anxiety and mood symptoms, was molested as a child, has a history of domestic violence, and has been unable to work full time since age 16 when she witnessed a friend being shot and killed after which Plaintiff has had a fear of being in public and other mental health impairments.  AR at 185, 228, 332.  Plaintiff also has a history of attempted suicide by overdose and suicidal ideation.  AR at 332-35.

From January 1, 2016 to March 19, 2018, Plaintiff obtained mental health treatment from Rochester Mental Health Center ("RMHC"), where she saw Natalie Donato, LMHC-P ("Counselor Donato"), and psychiatrist Katharine Duffy, M.D. ("Dr. Duffy").  AR at 320-70, 460-62, 463-523, 711-17.  On January 19, 2016, state agency consultant psychologist Kristina Luna, Psy.D. ("Dr. Luna"), completed a Psychological Assessment for Determination of Employability ("Employability Assessment") for the Monroe County Department of Human Services ("MCDHS").  AR at 533-38.  Dr. Luna reported Plaintiff's mental health symptoms since 2011 included social withdrawal, lack of motivation, depressed mood, tearfulness, worthlessness, passive suicidal ideation, nightmares and flashbacks, a sense of dread, fear of crowds and dying, difficulty breathing, sweating, dizziness, heart palpitations, and chest pains, as well as manic episodes, AR at 533, noting Plaintiff previously received outpatient treatment from April 2014 to November 2015 at Strong Behavioral Health, but quit because of lack of

progress.  *Id*.  Plaintiff also had a history of mental hygiene arrest[4] in 2011 following

which she was held for two days at Rochester General Hospital.  *Id*.  Mental status

examination revealed Plaintiff with a "drained and tearful" mood, unable to complete

simple division or serial 3s from 20, and immediate recall was three out of three objects,

but only two out of three objects after a five minute delay, but was able to complete five

digits forward and three digits backward.  *Id*.  Dr. Luna assessed Plaintiff as moderately

limited, defined as unable to function 50% of the time, in the mental functioning domains

of maintaining attention and concentration for rote tasks and regularly attending and

maintaining a schedule.  *Id*. at 536.

On December 19, 2016, Jenica Stalter, LMHC ("Counselor Stalter") with RMHC,

completed an Employability Assessment, reporting that from April to August 2016,

Plaintiff was treated at Strong Behavioral Health.  AR at 529-32.  Counselor Stalter also

reported Plaintiff received emergency mental health treatment in 2010, and on October

31, 2016 for suicidal thoughts.  *Id*. at 529.  Counselor Stalter listed Plaintiff's diagnoses

as including bipolar depression, trauma, and stressor-related disorder, but there was

insufficient data to assess Plaintiff's mental functioning limitations.  *Id*. at 531.

On November 2, 2017, Counselor Donato completed an Employability

Assessment for MCDHS.  AR at 525-28.  Counselor Donato assessed Plaintiff with

"moderate" limitations, defined as an inability to function 10% to 25% of the time, with

regard to her capacity to maintain attention and concentration for rote tasks.  AR at 527.

---

[4] "Mental hygiene arrest" refers to an involuntary, emergency hospital admission for immediate observation, care, and treatment of a person with mental illness which is considered likely to result in serious harm to herself or others.  *See* Mental Hygiene Law – Admissions Process, *available at*: http://omh.ny.gov/omhweb/forensic/manual/html/mhl_admissions.htm.

6

Plaintiff needed structure, routine, and limited interaction with people, and could not tolerate customer service, retail, or being around a lot of people.  *Id*. at 528.

On March 19, 2018, Dr. Duffy and Counselor Donato completed a Treating Medical Source Statement (Mental), noting Plaintiff's diagnoses included bipolar, depression, and PTSD.  AR at 712-17.  According to the statement, Plaintiff cannot maintain full time work because she was attending school five hours per day, a single parent of seven children, and the need to balance schedules.  AR at 712.  Plaintiff was specifically assessed with moderate limitations in the mental functioning domains of understanding, remembering, or applying information, and interacting with others, marked limitations in the domain of adapting or managing oneself, and extreme limitations in the domain of concentrating, persisting, or maintaining pace, *id*. at 717, and it was anticipated that should Plaintiff obtain full-time employment, she would be off-task 30% of the workday.  *Id*. at 715.


## DISCUSSION

1.    **Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g),

1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.*  "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id.* at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

2.    **Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains

capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

**3.    Analysis of Plaintiff's Arguments**

In the instant case, in the second ALJ decision, the ALJ found that despite some limited earnings in 2016 and 2018, and a brief unsuccessful work attempt in 2019, Plaintiff has not engaged in substantial gainful activity ("SGA") since November 9, 2016, the application date.  AR at 730-31.  The ALJ found Plaintiff suffers from the severe impairments of migraine headaches, chronic fatigue, bipolar type II disorder, depressive disorder, panic disorder, PTSD, trauma, and stressor related disorder, AR at 731, but that such impairments do not cause more than a minimal limitation of Plaintiff's ability to perform basic work activities and are therefore non-severe.  *Id*.  The ALJ further found that Plaintiff does not have an impairment or combination of impairments meeting or

medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 731-33. Despite her impairments, the ALJ found Plaintiff retains the RFC to perform a full range of work at all exertional levels with several nonexertional limitations including that Plaintiff must avoid concentrated exposure to environments with bright lights and/or sunshine, and is able to work in an environment with no more than a moderate level of noise. AR at 733-38. Plaintiff can understand, remember, and carry out simple instructions and tasks, can occasionally interact with coworkers and supervisors, and must have little to no contact with the public. *Id*. Plaintiff can work in a low stress work environment defined as "no supervisory duties, no independent decision-making required, no strict production quotas, minimal changes in work routine and processes, etc." *Id*. Plaintiff also can consistently maintain concentration and focus for up to two hours at a time. *Id*. Although Plaintiff has no past relevant work, the ALJ found that Plaintiff, based on her age, education, and RFC, could perform work existing in significant numbers in the national economy including as a hospital cleaner, food service worker in a hospital, and stocker/store laborer. *Id*. at 739. Accordingly, the ALJ found Plaintiff was not disabled as defined in the Act since November 9, 2016, when Plaintiff filed her application. *Id*. at 740.

In support of her motion, Plaintiff argues that remand is warranted because the ALJ, after assigning the opinion of Dr. Luna, who is one of Plaintiff's treating medical sources, significant weight, failed, without explanation, to incorporate the most restrictive limitations from such opinion into the RFC, especially Dr. Luna's opinion that Plaintiff's mental health impairments would cause Plaintiff to be off-task 50% of the time

for rote tasks such as the jobs identified by the ALJ.[6]  Plaintiff's Memorandum at 13-16.

In opposition, Defendant argues that contrary to Plaintiff's argument on this point, the

ALJ sufficiently explained why he declined to fully incorporate Dr. Luna's findings that

Plaintiff was unable to function 50% of the time in the mental functioning domains of

maintaining attention and concentration, regularly attending to a routine, and

maintaining a schedule.  Defendants' Memorandum at 8-9.

As Defendant argues, the ALJ drew a contrast between Dr. Luna's more

restrictive finding that Plaintiff had a 50% reduction in the mental functioning domains of

maintaining attention and concentration, regularly attending to a routine, and

maintaining a schedule and Dr. Luna's ultimate conclusion that Plaintiff was able to

work 40 hours a week with a reasonable accommodation described as work being

scheduled around Plaintiff's mental health therapy.  AR at 734 (citing AR at 536-38).

The internal inconsistency between Dr. Luna's assessment of several domains of

mental functioning and Dr. Luna's ultimate conclusion is sufficient to support the ALJ's

rejection of the 50% reduction in functioning assessment.  *See Micheli v. Astrue*, 501

---

[6] The court notes that based on Plaintiff's application date of November 9, 2016, the ALJ was required to apply the so-called "treating physician rule" whereby, generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) ("[t]he opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record") (internal quotations and brackets omitted).

Fed.Appx. 26, 29 (2d Cir. 2012) (determining that ALJ "properly declined to accord controlling weight to the opinion" of the plaintiff's treating physician where restrictions within the opinion were "inconsistent on their face").  As Defendant further argues, Defendant's Memorandum at 9, the form on which Dr. Luna checked boxes indicating Plaintiff was unable to function 50% of the time in several domains of mental functioning provided only three options including (1) no evidence of limitation, (2) unable to function 50% of the time, and (3) unable to function 75% of the time or more.  AR at 536.  Under this circumstance, Dr. Luna was forced to make a choice between two likely incorrect results, *i.e.*, either indicating Plaintiff had no restriction, or at least a 50% reduction in ability with regard to any mental functioning domain, rendering the form opinion not entitled to controlling weight.  *See Tricarico v. Colvin*, 681 Fed.Appx. 98, 100-01 (2d Cir. 2017) (a treating physician's opinion need not be given controlling weight either where it is internally inconsistent or inconsistent with other evidence in the record).

Moreover, not only is Dr. Luna's opinion internally consistent, but it also conflicts with other opinions in the record including that of other treating sources, Dr. Duffy and Counselor Donato, who opined that Plaintiff cannot maintain full time work because she was attending school five hours per day, a single parent of seven children, and the need to balance schedules, AR at 712, rather than because of limitations posed by Plaintiff's mental impairments.  Accordingly, the ALJ's failure to incorporate the most restrictive limitations from Dr. Luna's opinion into the RFC was not erroneous.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff's Motion (Dkt. 9) is DENIED; Defendant's Motion

(Dkt. 10) is GRANTED.  The Clerk of Court is DIRECTED to close the file.

SO ORDERED.


/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:       August 26, 2024
                    Buffalo, New York